HOOD, Judge.
This is a damage suit instituted by Mrs. Claudia Beth Williams Stephens, individually and for the use and benefit of her minor daughter, Burt Devonne Stephens, arising out of the alleged wrongful death of plaintiff’s husband, Searcy B. Stephens. Defendant is the Natchitoches Parish School Board. After trial of the case on its merits the trial court rendered judgment in favor of plaintiff, awarding the sum of $36,074.45 to her individually, and the additional sum of $17,375.00 to her for the use and benefit of her minor daughter, plus legal interest and costs. Defendant has appealed from that judgment, its sole contention on appeal being that the amounts awarded by the trial court were excessive. Plaintiff has answered the appeal, praying that the awards be increased. The sole issue presented on this appeal, therefore, relates to quantum.
Plaintiff’s husband, Searcy B. Stephens, was killed on February 11, 1955, as the result of a motor vehicle collision which occurred in Natchitoches Parish on that day. One of the vehicles involved in that collision was a. school bus which was being operated for defendant School Board. The decedent left as his sole survivors his wife, the plaintiff in this suit, and one minor child, Burt Devonne Stephens, issue of his marriage to plaintiff.
On December 10, 1956, Mrs. Stephens instituted a suit almost identical to this one against the Natchitoches Parish School Board, based on the same cause of action. The institution of that suit was authorized by House Bill 113, which had been passed by both houses of the Louisiana Legislature at its regular session held in 1956. The trial court dismissed that suit on an exception of no cause of action, but the Court of Appeal, Second Circuit, reversed that judgment and remanded the case for trial. Stephens v. Natchitoches Parish School Board, La.App. 2 Cir., 96 So.2d 396. After trial of the case on its merits the trial court rendered judgment in favor of plaintiff, individually, for $26,074.45, and in her favor for the use and benefit of her minor daughter for the sum of $10,375.00. On appeal, the Second Circuit Court of Appeal amended the judgment of the trial court by increasing the award in favor of plaintiff to the sum of $45,716.32, and increasing the award for the use and benefit of the child, to $19,375.00. See Stephens v. Natchitoches Parish School Board, La.App., 110 So.2d 156. After reviewing the case on writs of certiorari, however, the Supreme Court reversed the *118 judgments of the District Court and of the Court of Appeal, sustained the exception of no cause of action filed by defendant and dismissed plaintiff's suit. See Stephens v. Natchitoches Parish School Board, 238 La. 388, 115 So.2d 793.
In sustaining the exception of no cause of action and dismissing plaintiff’s first suit, the Supreme Court held that the Legislature had waived the State’s immunity from suit but not the State’s liability for torts. After that decision was rendered, however, Article 3, Section 35, of the LSA-Constitution was amended in 1960 to expressly authorize the Legislature to waive the defendant’s immunity, both from suit and from liability. The amendment further provided that “in the case of any such claim on which suit heretofore has been authorized by the Legislature, and the suit was dismissed on the ground that the defendant’s immunity from liability had not been waived, another suit on the same claim may be filed at any time prior to January 1, 1962, and such suit shall not be subject to the defense of res judicata based on the dismissal of the prior suit on such claim.”
The instant suit was filed on January 5, 1961, which was after the adoption of the 1960 amendment to Article 3, Section 35, of the constitution, and within the period of time allowed by that amendment for filing-such an action. In this action, therefore, the State of Louisiana has waived its immunity to suit and liability.
Turning now to the question of quantum, plaintiff, individually, claims damages for loss of support, for loss of love, affection and companionship, for mental anguish, and for funeral expenses and one-half the value of the decedent’s automobile which was damaged beyond repair. The claim of plaintiff for the use and benefit of her minor daughter is itemized substantially in the same manner, except that no claim is made for funeral expenses.
At the trial of this case, the parties stipulated that the entire record of the first suit which had been instituted by Mrs. Stephens, including the transcript of testimony and exhibits, could be filed in evidence in this suit and could be considered to the same extent as though the evidence were adduced and the exhibits filed in this matter. In accordance with that stipulation the entire record of the first suit was produced, and no further evidence was introduced by either party.
The evidence establishes that Mr. Stephens was 41 years, 9 months and 22 days old at the time of his death, and that plaintiff lacked a few days of being 41 years of age. Plaintiff and the decedent had been happily married for more than 20 years. Three children were born of this union, two of whom died in infancy, leaving as the decedent’s only surviving child Burt Devonne Stephens, who was 14 years of age at the time of her father’s death. We are convinced that the members of this family had a deep mutual love and affection for each other, and that a very close spirit of companionship existed between them. Even though the decedent traveled away from home during the day, he made a special effort to be at home with his family every night, except for about one night per week when his work required him to be out of town. He was always at home on weekends, and his family frequently enjoyed trips and outings together, including fishing trips, hunting trips, church on Sunday, vacations and visits to relatives. We agree with our brothers of the Second Circuit Court of Appeal in their statement that “the evidence in the instant case as to the relationship that existed between husband and wife and father and child is somewhat more detailed than usual, and convincingly depicts a picture of affection and understanding between this wife and child and the husband and father.” (110 So.2d 156, 165.)
The evidence further establishes that the decedent was in good health just prior to his death, and according to the American Experience Table of Mortality (LSA-R.S. 47:2405) he had a life expectancy of 26.22 years. For seven months prior to his death he was employed as a traveling salesman of *119 radio and T.V. supplies for the firm of Hale & McNeil, of Monroe. We agree with the conclusions reached by the Second Circuit Court of Appeal that his net earnings in that employment amounted to an average of about $400.00 per month, or $4,800.00 per year, making his anticipated net earnings during his life expectancy about $125,856.00. (See opinion of Second Circuit Court of Appeal, 110 So.2d 156, 163.)
Plaintiff remarried on August 31, 1959, about two and one-half years after Mr. Stephen’s death. The jurisprudence of this State, however, is settled to the effect that the engagement or remarriage of a spouse is completely irrelevant to a consideration of the damages to which such spouse is entitled. Jones v. Kansas City Southern Railway Company, 137 La. 178, 68 So. 401; Stephens v. Natchitoches Parish School Board, La.App. 2 Cir., 110 So.2d 156 (reversed on other grounds, 238 La. 388, 115 So.2d 793); Hightower v. Dr. Pepper Bottling Co. of Shreveport, La.App. 2 Cir., 117 So.2d 642; McFarland v. Illinois Central Railroad Co., La.App. 1 Cir., 122 So.2d 845 (amended and affirmed, 241 La. 15, 127 So.2d 183).
On the basis of these facts the trial court awarded plaintiff, individually, the sum of $35,000.00, as general damages, and the additional sum of $1,074.45 as special damages. The judgment does not specify what portion of this award, if any, was to compensate plaintiff for loss of support and what portion was for loss of love, affection, companionship, etc. The trial court also awarded to plaintiff, for the use and benefit of her minor daughter, the sum of $10,000.00 for loss of love, affection, companionship and guidance, plus the sum of $7,000.00 for loss of support, and special damages in the amount of $375.00.
There, of course, is no standard of measurement which can be used to determine the amount which should be awarded as damages for the loss of love, affection, companionship and guidance of a husband and father, or for the mental anguish or grief which is occasioned to the surviving members of the family by his death. Considering all of the facts of this case, however, the mutual love and affection which the members of this family had for each other and the awards which have been made in similar cases, we think an award of $10,000.00 to Mrs. Stephens, individually, and an award of $10,000.00 to her for the use and benefit of her minor daughter would be fair and adequate awards for the loss of love, affection and companionship and for the mental anguish and grief which they sustained.
Turning now to the amounts which should be awarded for “loss of support,” we note that the Supreme Court has expressed disapproval of the use of a mathematical formula for determining the amounts of such awards. Brown v. S. A. Bourg & Sons, Inc., 239 La. 473, 118 So.2d 891; McFarland v. Illinois Central Railroad Company, 241 La. 15, 127 So.2d 183; Pennington v. Justiss-Mears Oil Company, La., 134 So.2d 53. In Brown v. S. A. Bourg & Sons, Inc., supra, for instance, the Supreme Court said:
“The monetary damages resulting from loss of support cannot be calculated with mathematical exactitude. They are speculative in nature and as in the case of damages for loss of love and companionship, mental anguish and other damages of that character, much discretion must be left to the judge or jury.”
In the McFarland case, supra, the court quoted with approval the following statement from Dobyns v. Yazoo and Mississippi Valley Railroad Company, 119 La. 72, 43 So. 934:
“' * * * the question of the amount that should be allowed is impossible of determination upon any scientific basis. The most that the courts can do in such case is to exercise a sound judicial discretion and award such amount as, all the circumstances considered, may seem just to *120 both litigants and not unduly oppressive to either. * * *’ (Italics ours.)”
The rule which should be applied, and the factors which may be considered, in determining the amount to be awarded for loss of maintenance and support are clearly set out in the recent case of Pennington v. Justiss-Mears Oil Company, supra, in which case the Supreme Court said:
“The Bourg and McFarland cases (as well as the authorities cited therein) make it clear that in fixing a loss of support award for the widow the court endeavors to determine what she might reasonably have expected to receive from her husband in the future, it realizing all the while that the proper amount cannot be computed with mathematical exactitude or on any scientific basis, and that the ‘most that the courts can do in such case is to exercise a sound judicial discretion and award such amount as, all the circumstances considered, may seem just to both litigants and not unduly oppressive to either.’ Dobyns v. Yazoo and Mississippi Valley Railroad Company, 119 La. 72, 43 So. 934, 937. The husband’s earning capacity and age, it is noted, are but two of the many factors to be considered in determining the amount of the loss.”
In Swillie v. General Motors Corporation, La.App., 133 So.2d 813 (Certiorari denied) we awarded the widow and two minor children the aggregate sum of $49,794.20 for loss of support, and additional sums were allowed to each of these survivors for loss of love, affection and companionship. In that case the decedent’s average net income was about $3,666.00 per year, which is less than the average net income of the decedent in the instant suit, but he had a life expectancy of 36 years which was longer than that of Mr. Stephens. According to our figures, the anticipated net income of Mr. Swillie during his life expectancy would be $131,-976.00, which is very little more than that of Mr. Stephens, the decedent in this case. If the Swillie case should be used as a guide, therefore, it appears to us that the awards made by the trial court in the instant suit for loss of support are inadequate.
In Pennington v. Justiss-Mears Oil Company, supra, the Supreme Court determined' that an award of $85,000.00 to the surviving widow, and additional awards aggregating $34,500.00 to the surviving minor children,, for loss of maintenance and support were proper. In that case the decedent was 35 years of age and he had a life expectancy of about 30 years. The decedent’s average net income in that case was established to be about $21,551.77 per year, but the court pointed out that a substantial part of that income was derived from oil production which would gradually become depleted. The awards made in that case, however, also indicate to us that the amounts awarded by the trial court in the instant suit for loss of support are not adequate.
Considering all of the facts in this case, we feel that an award to plaintiff, individually, of the sum of $35,000.00 for loss of support is fair and is consistent with awards of that nature made in other cases.
Miss Stephens is entitled to recover for loss of support from the date of her father’s death until she reaches the age of majority, a period of about six years and four months. The evidence shows that she was wholly dependent upon her father. She expects to attend college, during which time her needs would be greatly increased. In our opinion an award of $9,000.00 to plaintiff for the use and benefit of her minor daughter for loss of support is proper.
The evidence establishes that the decedent’s automobile was demolished as a result of the accident, and that it had a value of $750.00 at that time. The trial court rendered judgment in favor of plaintiff for one-half that value, or $375.00, and in favor of plaintiff for the use and benefit of the minor child for the remaining one-half of the value of that car. The evidence also establishes that plaintiff incurred funeral *121 expenses amounting to $699.45 in connection with her husband’s death, and that amount also was awarded to plaintiff, individually. Defendant apparently does not question these awards, and we think they are proper.
In our opinion the trial court erred in awarding plaintiff less than the amounts which we have determined should be allowed. The judgment of the trial court, however, was rendered prior to the final ■decisions in the Swillie and the Pennington cases, and the trial judge at that time did not have the benefit of the views expressed by the Supreme Court and by this court in those decisions.
For the reasons herein set out, therefore, the judgment of the trial court is amended and recast to read as follows:
IT IS, THEREFORE, ORDERED, ADJUDGED and DECREED that there be judgment herein in favor of Mrs. Claudia Beth Williams Stephens and against the Natchitoches Parish School Board, in the total sum of $46,074.45, plus five percent per ■annum interest thereon from date of judicial demand, until paid.
IT IS FURTHER ORDERED, ADJUDGED and DECREED that there be judgment herein in favor of Mrs. Claudia Beth Williams Stephens, for the use and benefit of her minor daughter, Burt De-vonne Stephens, and against the Natchi-toches Parish School Board, in the full sum of $19,375.00, together with five percent per annum interest thereon from date of judicial demand, until paid.
IT IS FURTHER ORDERED, ADJUDGED and DECREED that the defendant, Natchitoches Parish School Board, pay all costs incurred in this matter, both in the district court and on appeal, except such costs as they are exempted from paying by law.
As above amended and recast, the judgment appealed from is affirmed.
Amended and affirmed.