**Mrs. Susan COHEN**

v.

**CHESTERFIELD COUNTY SCHOOL BOARD
and
Dr. Robert F. Kelly.**

**Civ. A. No. 678–70–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

May 17, 1971.

———◆———

John B. Mann, Richmond, Va., Philip J. Hirschkop, Alexandria, Va., for plaintiff.

Morris E. Mason, Asst. Commonwealth's Atty., Oliver D. Rudy, Commonwealth's Atty., Chesterfield, Va., for defendant.

## MEMORANDUM

MERHIGE, District Judge.

Mrs. Susan Cohen, the plaintiff in the above styled action, complains that a regulation of the Chesterfield County School Board (School Board) which requires her to take a leave of absence from her duties as a teacher in Midlothian High School at the end of her fifth month of pregnancy violates her constitutional rights in that it discriminates against her as a woman, thereby violating the equal protection clause of the Fourteenth Amendment of the Constitution of the United States.[1] Dr. Robert F. Kelly is Superintendent of the Chesterfield County schools. Jurisdiction is invoked under 28 U.S.C. § 1343 (3), the contention being that defendants' actions violate 42 U.S.C. § 1983.

Mrs. Cohen was first employed as a school teacher by defendant School Board for the 1968–69 school year under and pursuant to the terms and conditions of an employment contract as required by law. She was re-employed by the School Board for the 1969–70 school year and again in 1970–71, under similar, but not identical contracts.[2]

On or about November 2, 1970, Mrs. Cohen informed the School Board in writing that she was pregnant.[3] She stated that the estimated due date was April 28, 1971, and, with the consent of her obstetrician, asked that maternity leave be made effective as to her on April 1, 1971, which would be the end of her eighth month of pregnancy. Leave was granted effective December 18, 1970, pursuant to the terms and con-

1. The applicable provision reads, in relevant part, as follows:
Termination of employment of an expectant mother shall become effective at least four (4) months prior to the expected birth of the child. Termination of employment may be extended if the superintendent receives written recommendation from the expectant mother's physician and her principal, and if the superintendent feels that an extension will be in the best interest of the pupils and school involved.

2. She had not yet attained continuing contract status.

3. This was in accordance with the provision that notice of pregnancy must be given the School Board at least six months prior to the date of the expected birth.

ditions of the maternity leave policy,[4] and her request that April 1, 1971, be the effective date was denied.

Mrs. Cohen requested permission to present her case before the School Board, which she did on November 25, 1970.[5] The Board denied her request for an extension.[6] The basis was that even though she was, and is, considered to be an excellent teacher, the School Board had a replacement available, and felt it proper to abide by its regulation.

The unrefuted medical evidence is that there is no medical reason for the Board's regulation. As a matter of fact, pregnant women are more likely to be incapacitated in the early stages of pregnancy than the last four months.[7] Further, there is no psychological reason for a pregnant teacher to be forced to take a mandatory leave of absence. In short, since no two pregnancies are alike, decisions of when a pregnant teacher should discontinue working are matters best left up to the woman and her doctor.

In addition, no tenable administrative reason has been advanced by the defendants in defense of the provision. The reasons given by Dr. Kelly and the members of the School Board for the policy, such as fear of pushing with resulting injury to the fetus, and inability to carry out responsibilities in fire drills, are nugatory, and based on no empirical data whatsoever. Neither has there been a substantial study conducted upon which to base the contention that absences will increase during the latter stages of pregnancy. Basically, the four month requirement set forth in the provision was arbitrarily selected.

Mrs. Cohen seeks by way of relief to be placed in the same status she would have been in had she been allowed to teach until April 1. That includes wages from January, 1971, through March, 1971, and all other rights and benefits accorded teachers in the Chesterfield school system, including, but not limited to, seniority.

In 1905, the Supreme Court held that a New York law fixing maximum hours that an employee could work was violative of the Constitution in that it interfered with the right to contract. Lochner v. New York, 198 U.S. 45, 25 S.Ct. 539, 49 L.Ed. 937 (1905). However, less than three years later, in Muller v. Oregon, 208 U.S. 412, 28 S.Ct. 324, 52 L.Ed. 551 (1908), the Supreme Court restricted the meaning of *Lochner* to men, *Id.* at 418–419, 28 S.Ct. 324, and held that a law restricting working hours for women was reasonable due to the difference between the sexes. See also, Bosley v. McLaughlin, 236 U.S. 385, 35 S.Ct. 345, 59 L.Ed. 632 (1915); Miller v. Wilson, 236 U.S. 373, 35 S.Ct. 342, 59 L.Ed. 628 (1915); Riley v. Massachusetts, 232 U.S. 671, 34 S.Ct. 469, 58 L.Ed. 788 (1914). The Court later held, under the same theory, that minimum wage laws for women were valid. West Coast Hotel Co. v. Parrish, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1937). Thus, the Supreme Court had established a principle that legislation could, in certain instances, validly prescribe different treatment for men and women.

In 1948 an equal protection argument was first put forth to the Supreme Court. Goesaert v. Cleary, 335 U.S. 464, 69 S.Ct. 198, 93 L.Ed. 163 (1948).

---

4. Fn. 1, *supra.* Such leave is not a dismissal. See Va.Code Ann. 22–217.5 (1969 Repl. Vol.). Mrs. Cohen has the right to be re-employed by the School Board at a time when she determines she is physically fit and the School Board is able to place her.

5. Mrs. Cohen's principal had previously requested that she be allowed to teach until the end of the first semester, January 21, 1971.

6. A similar request had been presented by two teachers at the Board meeting of November 11, 1970, and was also denied.

7. Mrs. Cohen missed approximately ten days during the semester she taught. However, those absences were due to religious holidays and illnesses unrelated to her pregnancy.

The plaintiffs contended that a Michigan statute prohibiting women from being licensed as bartenders, except wives and daughters of male owners, violated the equal protection clause of the Fourteenth Amendment. The Court upheld the statute, stating that under the facts presented it wàs reasonable. *Id.* at 466, 69 S.Ct. 198, 199. However, Mr. Justice Frankfurter, speaking for the Court, stated that "[t]he Constitution in enjoining equal protection of the laws upon States precludes irrational discrimination as between persons or groups of persons in the incidence of a law." Id. Thus, though absolute equality is not required, Douglas v. California, 372 U.S. 353, 357, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), distinctions which are " 'irrational,' 'irrelevant,' 'unreasonable,' 'arbitrary,' or 'invidious,' " cannot be drawn. Harper v. Virginia Bd. of Elections, 383 U.S. 663, 673–674, 86 S.Ct. 1079, 1085, 16 L.Ed.2d 169 (1963) (Black, J., dissenting).

The defendants, whose actions constitute state action, have attempted to argue that the instant case is simply a matter of contract between parties. They contend that Mrs. Cohen, in signing the contract of employment, waived her constitutional rights. This argument has been made and rejected previously by the Court. Cohen v. Chesterfield County School Board, Civil Action No. 678–70–R, mem. decis. (E.D.Va., Jan. 19, 1971). Therefore, the question to be answered is what rights, as a public employee, does Mrs. Cohen have. "It is sufficient to say that constitutional protection does extend to the public servant whose exclusion pursuant to a statute [or regulation] is patently arbitrary or discriminatory." Wieman v. Updegraff, 344 U.S. 183, 192, 73 S.Ct. 215, 219, 97 L.Ed. 216 (1952). See also Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967).

The maternity policy of the School Board denies pregnant women such as Mrs. Cohen equal protection of the laws because it treats pregnancy differently than other medical disabilities. Because pregnancy, though unique to women, is like other medical conditions, the failure to treat it as such amounts to discrimination which is without rational basis, and therefore is violative of the equal protection clause of the Fourteenth Amendment. See Allied Stores of Ohio, Inc. v. Bowers, 358 U.S. 522, 79 S.Ct. 437, 3 L.Ed.2d 480 (1959); Morey v. Doud, 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957).

The defendants attempt to justify the policy on the ground that the five month rule is well within the lines of other school boards in the State of Virginia. However, similar treatment of a certain class in other school districts cannot be used to show that a certain policy has a rational basis. Rather, the Court must determine whether the classification drawn in the regulation, in light of its purpose, serves any rational purpose. Otherwise, it is arbitrary or invidiously discriminating. McLaughlin v. Florida, 379 U.S. 184, 191, 85 S.Ct. 283, 13 L.Ed. 2d 222 (1964).

Hence, the maternity leave policy in question is discriminatory within the proscription of the equal protection clause of the Fourteenth Amendment to the Constitution of the United States. Mrs. Cohen is entitled, therefore, to be put in the same position she would have been in had she been allowed to teach until April 1, 1971, as she requested. Such relief includes recovery of her salary for the months of January, February and March 1971, seniority to which she is entitled,[8] and any and all other rights and benefits she would have received had she been teaching during that period.

An appropriate order will enter.

---

8. Had Mrs. Cohen been allowed to teach she would have completed the full semester, and is therefore entitled to seniority credit for that period. However, on her own, she sought leave during the spring semester and is therefore not entitled to seniority credit for that semester since the School Board requires completion of a semester in order to attain seniority for the period. Thus, she receives a half year's seniority credit.